UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JOSE I. LUCIO,<br><br>        Plaintiff,<br><br>    v.<br><br>GALPERIN, et al.,<br><br>        Defendants. | CAUSE NO. 1:23-CV-303-PPS-APR |

OPINION AND ORDER

Jose I. Lucio, a pre-trial detainee at the Allen County Jail, filed a complaint alleging he suffers from an aortic aneurism that is increasing in size. His condition was being monitored every three months prior to his incarceration, and he believes the care he has received for his condition while incarcerated is inadequate. ECF 1. According to Lucio, in December 2022, his aorta measured 3.8 centimeters. Additional testing was performed on April 7, 2023. Lucio did not learn the results until May 8, 2023, when Dr. Galperin told him the diameter of his aorta had grown to 4.3 centimeters. Dr. Galperin referred Lucio to a specialist because he believed that, if the diameter grew to 5 cm, Lucio would need surgery. Lucio saw a surgeon on June 15, 2023. Lucio indicates that the doctor ordered some tests to determine if surgery was needed urgently or if it could wait a month or two. Lucio says the tests were to be expedited because of the nature of his condition, but when he filed his complaint on July 8, 2023, the tests had not yet been performed.

I granted Lucio leave to proceed against Allen County Sheriff Troy Hershberger in his official capacity for injunctive relief to receive constitutionally adequate medical care for his aortic aneurism, as required by the Fourteenth Amendment.[1] ECF 4. I ordered Sheriff Hershberger to respond to the request for a preliminary injunction by explaining how he is providing Lucio with constitutionally adequate care for his condition, with supporting medical documentation and declarations from other staff as necessary. Lucio did not file a reply.

The record before me shows that a computerized tomography exam (CT scan) performed on May 17, 2022, revealed a "[m]inimally increased size of ascending thoracic aorta measuring 3.8 cm which previously measured 3.6 cm." ECF 9-3 at 22-24. Notes from a follow-up appointment on May 24, 2022, state that "[o]bviously a thoracic aneurysm of the aorta is high risk if he gets above 4.5 to 5 cm or will need to be repaired surgically." *Id.* at 25. The notes indicate that the CT scan will be repeated in six months, and that it doesn't help that Lucio's blood pressure is poorly controlled. *Id.* at 26.

Following his incarceration, Lucio underwent an electrocardiogram on March 15, 2023, which was normal. *Id.* at 62. Another echocardiogram was performed on March 30, 2023; it showed mild aortic stenosis but was otherwise grossly unremarkable. ECF 9-4 at 33-34. A CT scan was conducted on April 7, 2023. *Id.* at 56-58. It showed dilatation of the aortic root but "no evidence of thoracic aortic aneurysm, dissection, or flow-

---

[1] I also granted Lucio leave to proceed against Dr. Galperin in his individual capacity for compensatory and punitive damages for acting in an objectively unreasonable manner in response to Lucio's need for urgent testing related to his aortic aneurism, in violation of the Fourteenth Amendment.

2

limited stenosis." *Id.* at 58. Lucio attended a consultation with Allen County Cardiology, LLC, on June 15, 2023. A Thallium stress test and echocardiogram were ordered, and there is a note to get CT chest results. ECF 9-5 at 10. A follow-up appointment was to be scheduled to discuss the results after the tests. *Id.* at 3-13. The echocardiogram showed moderate aortic stenosis and trace tricuspid regurgitation. ECF 9-6 at 1-3. The stress test was performed on July 25, 2023, with results showing a normal perfusion scan with no evidence of inducible ischemia, normal left ventricular size with normal systolic thickening and function. Lifestyle changes and periodic repeat evaluations were recommended, as well as exploration of non-cardiac causes of his symptoms. *Id.* at 4-5. It isn't clear if Lucio's follow-up appointment had taken place at the time Sheriff Hershberger filed his response to the request for a preliminary injunction on August 2, 2023. ECF 9.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the first prong, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally

3

includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id*. at 763 (quotation marks omitted).

As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. "Mandatory preliminary injunctions – those requiring an affirmative act by the defendant – are ordinarily cautiously viewed and sparingly issued" because "review of a preliminary injunction is even more searching when the injunction is mandatory rather than prohibitory in nature." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks and citation omitted).

Additionally,

> [t]he PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right. This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: Prison officials have broad administrative and discretionary authority over the institutions they manage.

*Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (quotation marks, brackets, and citations omitted).

To establish a violation of the right to adequate medical care, a pretrial detainee must allege: "(1) there was an objectively serious medical need; (2) the defendant committed a volitional act concerning the [plaintiff's] medical need; (3) that act was

4

objectively unreasonable under the circumstances in terms of responding to the [plaintiff's] medical need; and (4) the defendant act[ed] purposefully, knowingly, or perhaps even recklessly with respect to the risk of harm." *Gonzalez v. McHenry Cnty.*, 40 F.4th 824, 828 (7th Cir. 2022) (citation and internal quotation marks omitted). In determining whether a challenged action is objectively unreasonable, the court must consider the "totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020).

In this case, the record before me demonstrates that Lucio has received extensive care for his condition. Furthermore, the record currently before me does not demonstrate that any physician has ordered that urgent testing should be performed or that any order for urgent testing has been disregarded. Prisoners and non-prisoners alike must be patient when it comes to the timing of medical care. On the record before me, I cannot find that Lucio has demonstrated either a reasonable likelihood of success on the merits or that he is likely to suffer irreparable harm in the absence of a preliminary injunction.

For these reasons, the request for a preliminary injunction contained in the complaint (ECF 1) is DENIED.

SO ORDERED.

ENTERED:  September 5, 2023.

                                       /s/   Philip P. Simon
                                       PHILIP P. SIMON, JUDGE
                                       UNITED STATES DISTRICT COURT